UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**

MAY 1 8 2005

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

IBRAHIM PARLAK,

Petitioner/Plaintiff,

v.

CAROL JENIFER, District Director,
United States Citizenship & Immigration
Services, United States Department of
Homeland Security,

Respondent/Defendant.

Exh. A-F
Civil Action No. 05-70826

Honorable Avern Cohn

## PETITIONER'S SUMMARY BRIEF

This is a clear-cut case. It requires the answer to one question: should this Court order the reasonably conditioned release of Mr. Parlak, a lawful permanent resident ("LPR") and model immigrant who is vigorously contesting his deportation, when: (a) the Government has admitted he is not a threat; (b) he is not a credible flight risk; and (c) he has strong and deep ties to his community, including a home, business, and seven year-old American daughter?

For the Court to answer "yes" to this question, three straightforward conclusions are required. First, this Court *has the authority* to consider Mr. Parlak's petition because it has jurisdiction over the proper respondent—the DHS District Director in Detroit. Second, this Court *can* grant Mr. Parlak's petition because mandatory detention does not apply here. Third, this Court *should* grant Mr. Parlak's petition because he is an LPR with Constitutional rights, and DHS has violated these rights. Upon reaching these conclusions, the Court should grant Mr. Parlak's petition and order his release pursuant to reasonable conditions described herein.

ARGUMENT

## I.   THIS COURT HAS THE AUTHORITY TO GRANT MR. PARLAK'S PETITION.

To grant a habeas petition, the court issuing the writ must have jurisdiction over the custodian. Braden v. 30th Judicial Ct. of Ky., 410 U.S. 484, 495 (1973). The decisive jurisdictional question before the Court is whether the DHS District Director is Mr. Parlak's custodian, and is therefore the proper respondent in this case.

Mr. Parlak has named the proper respondent here. Roman v. Ashcroft established the "immediate custodian" rule in the Sixth Circuit that Mr. Parlak followed to the letter. Rumsfeld v. Padilla contained an express carve-out for detained alien cases and did not disturb this rule. And United States v. Garcia-Echaverria, decided by the Sixth Circuit shortly after Padilla, reiterated Roman's "immediate custodian" rule. 374 F.3d 440 (6th Cir. 2004). Moreover, the documents authorizing Mr. Parlak's detention and the Intergovernmental Services Agreement ("ISA") between DHS and Calhoun County Jail conclusively demonstrate that Detroit DHS, not the Calhoun County Sheriff, is Mr. Parlak's true custodian.

The government's argument to the contrary is insupportable. The "district of confinement" rule does not apply here, and the Government's proffered post-Padilla orders transferring jurisdiction from this District were not fully informed as to crucial facts and precedent. Mr. Parlak has named the proper respondent.

### A.   The DHS District Director in Detroit is the proper respondent here.

On August 13, 2003, the Sixth Circuit established the "immediate custodian" rule for alien habeas corpus petitioners within the circuit:

> Historically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who *has*

2

> *power over* the petitioner and…on the convenience of the parties and the court….This is known as the '*immediate custodian rule*'…We concluded that although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located '*has power over*' alien habeas corpus petitioners.

Roman v. Ashcroft, 340 F.3d 314, 320 (6th Cir. 2003) (emphasis supplied) (internal citations and quotations omitted).

Between the time the Sixth Circuit decided Roman (August 13, 2003) and the Supreme Court decided Padilla (June 28, 2004), there was no dispute: *every* habeas petition on behalf of an immigrant detained in the Western District of Michigan was filed in the Eastern District and named either DHS or BICE in Detroit as the Respondent, pursuant to Roman. The Government did not contest jurisdiction or venue in any of these cases. See Ex. A, Case Summaries. The "district of confinement" argument was never raised by a court *sua sponte* or by DHS. Consequently, with one exception based on a habeas *petitioner*'s pleading,[1] no judge from the Eastern District transferred a habeas petition from immigrant detainees in Calhoun County or Sault St. Marie to the Western District in the Roman-Padilla interval. On information and belief, no habeas petitions were filed in the Western District by detained aliens during the same period.[2] This was true even though the Sixth Circuit had decided Martin v. Perez on February 13, 2003—

---

[1]    Exhibit B contains the sole exception of a habeas petition filed in the Eastern District of Michigan but transferred to the Western District during the Roman-Padilla interval. As Judge Rosen's discretionary order makes clear, venue was transferred because the *alien's habeas petition* stated "venue lies in the United States District Court for the Western District of Michigan." See Ex. B at 4-5.

[2]    Mr. Parlak's counsel ran a PACER search in the Western District of Michigan with the following parameters: (1) cases filed between 8/13/2003 and 6/28/2004; and (2) civil code 460 (deportation), which is used for immigrant habeas petitions. The search returned zero results.

3

six months before <u>Roman</u>. In that general habeas case, the court held that "[a] petition for habeas corpus must be filed in the district court that has jurisdiction over a prisoner's place of confinement." 319 F.3d 799, 802 (6th Cir. 2003). Obviously, both the Eastern District courts and DHS believed <u>Roman</u>'s "immediate custodian" rule trumped <u>Martin</u>'s "district of confinement" rule for alien habeas petitioners.

<u>Rumsfeld v. Padilla</u>, 124 S.Ct. 2711 (2004), did not disturb <u>Roman</u>. Footnote 8 of that decision expressly carved out habeas petitions "filed by an alien detained pending deportation." 124 S.Ct at 2718, n. 8. Included in the Court's exception were cases addressing both core challenges (contesting physical custody) and non-core challenges (contesting the underlying reasons for detention). Cf. <u>Roman</u> (non-core challenge); <u>Vasquez v. Reno</u>, 233 F.3d 688 (1st Cir. 2000) (core challenge), <u>cited in</u> <u>Padilla</u>, 124 S.Ct at 2718, n. 8. Later, in footnote 16, the <u>Padilla</u> court eliminated any doubt that its "immediate custodian rule" (in which the warden was the only proper respondent) did not apply to detained alien cases: "As a corollary to the *previously referenced exception to the immediate custodian rule, n. 8 supra* ..." <u>Id</u>. at 2725, n. 16 (emphasis supplied). In this footnote, the Supreme Court explicitly reinforces Mr. Parlak's argument that <u>Padilla</u> does not overrule <u>Roman</u>.[3]

---

[3] The Government's argument that <u>Padilla</u> governs an alien's core habeas challenge because New York district courts have adopted its "immediate custodian" rule is misplaced. See Answer at 7. At the time the Supreme Court decided <u>Padilla</u>, the Second Circuit had not established who the proper respondent was for alien habeas petitions. <u>Henderson v. INS</u>, 157 F.3d 106, 122-129 (2nd Cir. 1998), <u>cert</u>. denied, 526 U.S. 1004 (1999) (suggesting that the INS District Director could be the appropriate respondent, but certifying the question instead as a matter of personal jurisdiction). In the absence of clear guidance from the Second Circuit, New York district courts applied <u>Padilla</u>'s "default rule." 124 S.Ct at 2718. No such uncertainty about the proper "immediate custodian" existed in the Sixth Circuit at the time <u>Padilla</u> was decided.

4

Shortly after the Supreme Court decided <u>Padilla</u>, the Sixth Circuit reaffirmed <u>Roman</u>'s rule that "a petition for a writ of habeas corpus is properly filed only in a court that has personal jurisdiction over the alien's immediate custodian." <u>U.S. v. Garcia-Echaverria</u>, 374 F.3d 440, 449 (6th Cir. 2004) (citing <u>Roman</u>). <u>Garcia-Echaverria</u> is the most recent post-<u>Padilla</u> precedent in this circuit and did not add a requirement to <u>Roman</u> that habeas petitions be filed only in the district of confinement.

Finally, the Intergovernmental Service Agreement ("ISA") and attachments requested by the Court conclusively demonstrate that the District Director of Detroit BICE, not the Sheriff of Calhoun County, is Mr. Parlak's "immediate custodian":

- The "Notice to EOIR: Alien Address" refers to Mr. Parlak as "Currently *detained by INS* at: Calhoun County Jail." <u>See</u> Ex. C at 2 (emphasis supplied).

- The "Order to Detain or Release Aliens" is addressed "to" the Sheriff of Calhoun County and signed by Senior Special Agent John Owens of Detroit BICE in the box "Signature of Officer *Directing Action*." <u>See</u> <u>id</u>. at 3 (emphasis supplied).

- The "Authority to Detain" form lists Mr. Parlak's address as "DICE" (the abbreviation for Detroit ICE). <u>See</u> <u>id</u>. at 4.

- The ISA states: "The Local Government agrees to release federal prisoners only to law enforcement officers of agencies initially committing the prisoner (i.e., DEA, INS, etc.) or to a deputy US [Marshal]." <u>See</u> <u>id</u>. at 7, Art. V, ¶2. There is no provision that allows the sheriff to release a detained alien to a court (including a federal court in the Western District) if a habeas writ issues.

- The ISA further states: "The Local Government will <u>not</u> transport federal prisoners to any U.S. Courthouse without a specific request from the US [Marshal]..." <u>See</u> <u>id</u>. at 13, Art. XVI, ¶1.c. (emphasis in original). Thus, a writ of habeas corpus compelling the sheriff to produce Mr. Parlak to a court would place the sheriff in the position of either defying the court or violating the ISA.

5

On the basis of Roman, Padilla's footnotes 8 and 16, Garcia-Echaverria, and the facts contained within Mr. Parlak's detention documents and the ISA, there can be no doubt: the DHS District Director in Detroit is Mr. Parlak's only "immediate custodian."

**B.      The district of confinement rule does not apply to this case.**

In its supplemental brief, the Government attempts to persuade the Court that the "district of confinement rule," and not Roman, controls here. See Gov. Supp. Br. at 1-2. In support, the Government attaches four post-Padilla orders from the Eastern District of Michigan transferring jurisdiction and venue to the Western District. See id., Attachments. This argument fails for two reasons.

First, the Sixth Circuit's post-Padilla decision in Garcia-Echaverria reaffirmed Roman's "immediate custodian" rule and did not add a "district of confinement" requirement. All the Sixth Circuit requires, post-Padilla, is that a court have personal jurisdiction over the alien's immediate custodian. Garcia-Echaverria, 374 F.3d at 449. This is consistent with proceedings that occurred between Roman and Padilla, discussed supra, in which petitions from Western District detainees were filed in the Eastern District and, as a matter of routine, adjudicated here.

Second, the Government's late-proffered orders from the Eastern District did not have the benefit of the analysis here. Two of these orders resulted from *pro se* habeas petitions in which the jurisdiction/venue question was not briefed by the petitioners. See Ex. D, Dockets for Oni, Nicolas, at 1, 3 (no response to BICE's motion to dismiss in either case). In the other two orders (Beltran and Demirxhiu), petitioners' counsel did not make the following arguments: (1) Padilla footnote 16, which proves that habeas petitions of detained aliens are an exception to Padilla's "immediate custodian" rule; (2) Garcia-Echaverria's post-Padilla reaffirmation of Roman's

6

"immediate custodian" rule; and (3) the detention documents and ISA that conclusively demonstrate that the District Director of Detroit BICE, and not the Calhoun County Sheriff, is the only proper custodian here. See Ex. E, Beltran's Docket and Reply to Motion to Dismiss or Transfer Venue at 7-15 (no mention of Padilla footnote 16, Garcia-Echaverria, or the ISA); Ex. F, Demirxhiu Docket, Response and Order at 5-11 (same).

Respectfully, Judges Rosen and Battani did not have the benefit of these additional facts and precedent when granting the Government's transfer motions. These points compel the conclusion that the DHS District Director is the only proper respondent to Mr. Parlak's habeas petition. Because that individual is located in Detroit, this Court has jurisdiction.

**C.    Because Detroit BICE is the proper respondent, venue is proper in this court.**

Because this Court has jurisdiction over the proper respondent in this case, venue is proper in the Eastern District of Michigan and nothing compels transfer. Even assuming, *arguendo*, that the Western District also has personal jurisdiction over the Detroit DHS District Director, a change of venue is not warranted now unless it is "in the interest of justice." See 28 U.S.C. §1404(a). No "interest of justice" supports transfer here. The Eastern District is the locus of where the "transactions" giving rise to this detention occurred and is also where the respondent/defendant is located. This petition does not require testimony, so the convenience of witnesses is not an issue. Most important is the fact that Mr. Parlak's habeas petition has been pending since March 3, and he has now been incarcerated for almost ten months. Because Mr. Parlak has named the proper respondent and this Court has jurisdiction, transferring the petition at this point is not required and would affirmatively dis-serve "the interest of justice."

7

## II.    MANDATORY DETENTION DOES NOT APPLY HERE.

### A.    The IIRIRA's "released after" language applies to aliens charged with deportation under §237(a)(4)(B).

The decisive question in determining whether INA §236(c) mandatory detention applies to Mr. Parlak pertains to the IIRIRA's "released after" limitation. Because of this limitation, DHS, the Immigration Judge and the BIA have never asserted that the aggravated felony charges subject Mr. Parlak to mandatory detention under §236(c)(1)(B). The same limitation precludes the application of §236(c)(1)(D) on the basis of the terrorism charges. The Government's claims to the contrary—made without citation to controlling precedent—are baseless.

As is true for aggravated felons, mandatory detention cannot apply to aliens charged with removal under §237(a)(4)(B) if they were released from non-DHS/INS custody before October 9, 1998. Because the Government cannot offer precedent to refute this, they engage in an expansive discussion of the history of the INA since 1952. See Gov. Supp. Br. at 3-8. Their lengthy argument comes down to a simple assertion: an alien cannot be in non-DHS custody for purposes of the "released after" rule unless he was convicted of a crime. See id. at 13-14. Therefore, the IIRIRA's "released after" language could not possibly apply to suspected terrorists. This argument is obviously wrong.

At least three examples demonstrate how an alien charged with removal under §237(a)(4)(B) may have been held in non-DHS/INS custody without first being convicted of terrorist crimes, or in fact, of *any* crime.

*First*, an alien could be charged with a terrorism crime under 18 U.S.C. §2331 *et seq.*, released on bond or held without bond during the criminal proceedings, and acquitted. Although not proven guilty beyond a reasonable doubt, the alien could still be subject to deportation under

the INA's lower burden of proof (clear and convincing evidence). If the alien were released on bond after October 9, 1998, or acquitted and released from no-bond *criminal* detention after that date, he would be subject to §236(c) mandatory detention once removal proceedings were initiated against him.

*Second*, the alien could be taken into custody as a material witness under 18 U.S.C. §3144. Under this provision, "a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title [i.e., like a criminal defendant]." See 18 U.S.C. §3144. If the alien testified to conduct suggesting he was deportable for terrorist activity, and the alien was released from material witness custody after October 9, 1998, then DHS could arrest and detain the alien under §236(c).[4]

*Third*, the alien could be considered an enemy combatant, held in military custody, and released for lack of evidence. For example, if a prisoner in a Padilla situation were (a) an alien, and (b) released from military custody after October 9, 1998, the IIRIRA would allow DHS to mandatorily detain him under §236(c).

Though not convicted of any crime, aliens in any of these three situations could be taken immediately into DHS custody once released, placed in removal proceedings, and subjected to mandatory detention under §236(c). With these examples in mind, applying the "released after" limitation to aliens charged with removal for terrorist activity—even if they have never been convicted of a crime—makes perfect sense. "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to

---

[4]     As further proof, the ISA itself describes these first two examples. See Ex. C at 6, Art. 1 (describing "the detention of persons *charged with* or convicted of violations of federal law or *held as material witnesses* (federal prisoners)") (emphasis supplied).

enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 120 S.Ct 1942, 1947 (2000) (internal quotations omitted). No "absurd" dispositions result from applying IIRIRA's "released after" provision to aliens charged with removal under §237(a)(4)(B).

There is no dispute that Mr. Parlak was released from a Turkish prison well before October 9, 1998 and that he is not subject to additional jail time or probation. As such, the "released after" limitation precludes applying §236(c) to Mr. Parlak.

**B.    The Court may consider Mr. Parlak's IIRIRA §303(b)(2) argument even if it was not raised to the BIA.**

Without citing any controlling precedent addressing the facts in this case—Mr. Parlak's challenge to his no-bond detention prior to a final order of removal[5]—the Government argues that "[b]y not raising the section 303(b)(2) issue [the "released after" provision] to the Board...Parlak failed to exhaust his administrative remedies." See Gov. Supp. Br. at 12. The Government implies that Mr. Parlak is to blame for the game of musical chairs DHS has played with his detention—starting with 8 C.F.R. §1103.19(h)(2)(i)(C) (at issue during his August 2004 "Joseph hearing" and BIA appeal), followed by 8 C.F.R. §1103.19(h)(2)(i)(D) (resulting from the Government's Oct. 14, 2004 "terrorist activity" charges, filed after Mr. Parlak had submitted his bond appeal), and, just recently, INA §236(a) (cited by DHS in its Answer). The exhaustion argument is without merit.

---

[5]    The Sixth Circuit case cited by the Government, Ramani v. Ashcroft, 378 F.3d 554 (6th Cir. 2004) pertains to a habeas petition in which the petitioner was challenging his denial of asylum and final order of removal, not his pre-final order detention. Ramani, 378 F.3d at 558. Exhaustion in "final order" cases is required by statute under 8 U.S.C. §1252(d)(1). Id. However, that statute does not apply here, as Mr. Parlak is not contesting a final order of removal in his petition. The Government's reliance on Ramani here is inappropriate.

10

First, exhaustion of administrative remedies is not statutorily mandated here. The INA mandates exhaustion in order to challenge "final order[s] of removal." See 8 U.S.C. §1252(d)(1). This provision does not cover challenges to preliminary custody or bond determinations, which are quite distinct from final orders of removal. See, e.g., Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004). Additionally, Congress requires exhaustion for certain types of habeas petitions, but not for those brought under 28 U.S.C. §2241. See, e.g., James v. Walsh, 308 F.3d 162, 167 (2nd Cir. 2002) ("Section 2241 contains no such exhaustion requirement.").

Second, in the absence of a statutory mandate, this Court has discretion to determine whether administrative exhaustion is required, and the facts of this case weigh heavily against requiring exhaustion here. McCarthy v. Madigan, 503 U.S. 140, 144, 146 (1992).[6] Exhaustion should be excused here because: (1) the BIA, by failing to remand Mr. Parlak's bond appeal after DHS had brought new charges, prejudiced Mr. Parlak's opportunity to raise these arguments; (2) appealing the §303(b)(2) issue through the BIA would have been (and would be) futile because the Board has predetermined the issue of Mr. Parlak's detention; and (3) Mr. Parlak has raised substantial constitutional questions, discussed infra. McCarthy, 503 U.S. at 146-48.

It is DHS and the BIA, not Mr. Parlak, that foreclosed the §303(b)(2) arguments. As the record shows, Mr. Parlak appealed the Immigration Judge's *sole basis* for ruling that he was not entitled to a bond hearing—that he was "described in" INA §237(a)(4)(B). See Pet., Ex. 1 at 6.

---

[6]   McCarthy has been superseded by statute to the extent it held that federal prisoners seeking monetary damages in a Bivens action are not required to exhaust administrative remedies. However, McCarthy's principle that when exhaustion is not statutorily mandated, "sound judicial discretion governs," 503 U.S. at 144, remains good law, as does its discussion of how that discretion should be applied. See, e.g., Zephyr Aviation, LLC v. Dailey, 247 F.3d 565, 570-73 (5th Cir. 2001).

Mr. Parlak challenged this ruling on the basis of INA §236A, which became law under the Patriot Act. Under that law, only the Attorney General or his Deputy can order the detention of a suspected terrorist before charging him with a crime or with deportation; this authority is not delegable to DHS. See Gov. Supp. Br., Ex. 2 (Resp. Bond Appeal) at 7-11. However, shortly after Mr. Parlak raised this argument, DHS charged him as deportable under §237(a)(4)(B), mooting Mr. Parlak's §236A argument. But rather than remand Mr. Parlak's appeal to the Immigration Judge for a new "Joseph hearing" on these late-filed charges, the Board foreclosed briefing on the issue by dismissing Mr. Parlak's appeal. Thus, the BIA is responsible for Mr. Parlak's inability to properly raise his §303(b)(2) argument and any resulting prejudice.

Additionally, raising the §303(b)(2) issue to the BIA would have been (and would be) futile. Mr. Parlak could have achieved nothing more than a moral victory by raising the §303(b)(2) issue to the Board after the "terrorist activity" deportation charges were filed (and well after he had submitted his BIA bond brief). As the BIA stated in its opinion, "The respondent's challenge to the regulations promulgated by the Attorney General is not properly before this Board *as we are bound by the regulations.*" See Pet., Ex. 2 at 1 (emphasis supplied). In other words, even if Mr. Parlak had convinced the BIA that the IIRIRA's "released after" provision applied to mandatory detention for "terrorist activity," the Board still would have ruled that he was not eligible for a bond hearing because he was "described in" §237(a)(4)(B) (pursuant to 8 C.F.R. §1003.19(h)(2)(i)(C)). Not even the express language of a Congressional statute (INA §236A) would have dislodged the BIA from its strict adherence to the Attorney General's regulations. It is difficult to imagine a more concrete example of futility.

Finally, it is well-settled that the BIA has no jurisdiction to decide constitutional questions. See, e.g., Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994). As discussed next, the heart of Mr. Parlak's petition is that no-bond detention violates his due process rights.

### III. MR. PARLAK'S DETENTION WITHOUT BOND IS UNCONSTITUTIONAL.

#### A. As a lawful permanent resident, Mr. Parlak has significant due process rights.

The Due Process Clause states "[n]o person shall be....deprived of life, liberty, or property without the due process of law." U.S. CONST. Amend. V. Aliens qualify as "persons" within this language and are therefore afforded due process protection once within the borders of the United States. Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)). Although due process rights are bestowed upon *all* aliens located within the United States, lawful permanent residents like Mr. Parlak are entitled to greater due process rights than other aliens. Langdon v. Plasenica, 459 U.S. 21, 32 (1982). This includes a substantive Fifth Amendment liberty interest. Ly v. Hansen, 351 F.3d 263, 269 (6th Cir. 2004).

The detention of an individual equates to the deprivation of that individual's liberty. Addington v. Texas, 441 U.S. 418, 425 (1979) (in which the Supreme Court notes that it "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). Moreover, the Zadvydas court highlighted the critical necessity for constitutional protections *specifically* for instances in which an individual is detained by the Government. "Freedom from imprisonment – from government custody, detention or other forms of physical restraint – lies at the heart of the liberty that Clause

protects." Zadvydas, 522 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). The Government's detention of Mr. Parlak deprives him of a protected liberty interest.

**B.     The Government has not demonstrated a "strong special justification" for Mr. Parlak's continued detention.**

"When actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." Ly, 351 F.3d at 273. In this case, the Government has not only failed to allege a "strong special justification" (e.g., harm-threatening mental illness, Zadvydas, 533 U.S. at 690), they have *admitted* that Mr. Parlak is not a threat. Moreover, his actual removal is not reasonably foreseeable, he is not a credible flight risk and his ties to his community are undisputed.

1.     The Government has admitted that Mr. Parlak is not a threat.

During the teleconference held on May 11, 2005, the Court pointedly asked Government's counsel if Mr. Parlak was a threat. The Government conceded that he was not. DHS fails completely to provide the required "strong special justification" that overbalances Mr. Parlak's liberty interest. Their admission is shorthand for another undisputed fact: *Mr. Parlak has lived an exemplary life in the United States since his arrival in 1991.*

2.     Mr. Parlak's actual removal is not reasonably foreseeable.

On May 5, 2005, Mr. Parlak filed a 95-page brief in support of his appeal to the BIA. On information and belief, the Board will require at least two months to rule on his appeal; more time will be required if the Board grants Mr. Parlak's request for oral argument.

Assuming, *arguendo*, that the BIA affirms the Immigration Judge's order, Mr. Parlak will seek a stay of deportation and file an appeal with the Sixth Circuit. His appeal is expected to

14

raise both pure questions of law and constitutional issues, including: (1) whether evidence extracted from torture is admissible in immigration court; (2) whether a 1990 conviction in a Turkish Security Court, for which Mr. Parlak fully served his time, can be construed as a conviction "after admission" because of that same court's 2004 decision to *re-sentence* Mr. Parlak to *less than time served*; (3) whether an alien granted asylum on the basis of disclosures made in 1991 can be deported in 2005 for "terrorist activity" on the basis of *the same disclosures*; and (4) whether the terrorism deportation statutes are infinitely retroactive, allowing deportation of immigrants (and stripping of citizenship for naturalized individuals) who fought for the World War II Resistance or Irgun, or took arms against tyrants like Mao, Castro, the Taliban or Saddam Hussein. This appeal is expected to take at least a year. The importance and novelty of the issues in this case will then likely result in a petition for a writ of *certiorari* by either DHS or Mr. Parlak, depending on the Sixth Circuit's decision.

As the Ly court held, "[a]n alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further...he is not responsible for the amount of time that such determinations may take." 351 F.3d at 272. Final resolution of this case will not occur for years.

3.    The Government's claim that Mr. Parlak is a flight risk, raised for the first time in May 2005, is not supported by credible evidence.

At the May 11, 2005 teleconference held by this Court, the Government stated *for the first time* that it believed Mr. Parlak was a flight risk. What is their evidence? None was presented during the teleconference and none was presented by DHS before then. Moreover, DHS has no response to the following: (1) Mr. Parlak is stateless—he has no passport, citizenship, or travel papers; (2) Mr. Parlak is vigorously contesting his deportation; (3) before he

15

was arrested, Mr. Parlak had a perfect attendance record at immigration proceedings and meetings with government officials (including the FBI) in the more than *two years* since he was first placed in removal proceedings; (4) Mr. Parlak has strong, deep and uncontested ties to his community, discussed infra; and (5) reasonable conditions of release, including bond and tether, can be implemented to mitigate the "perceived" flight risk in this case.

4.      Mr. Parlak's ties to his community are uncontested.

DHS has *never* disputed Mr. Parlak's strong and deep ties to his community, which include: (1) a group of ardent and loyal friends who support his release and the dismissal of the removal charges; (2) his ownership of a home and restaurant; and (3) his loving relationship with seven year-old daughter Livia. See Pet., Exs. 3-6.

DHS's attempt to refute all this reduces to the following bizarre proposition concerning Mr. Parlak: that rather than continue his spirited defense in the company of a community that loves and supports him, Mr. Parlak is more likely to throw away everything—his house, his restaurant, his seven year-old daughter, and his opportunity for vindication—by fleeing if he is released, even though he has nowhere to go and no way to get there.

Nothing else needs to be said. Mr. Parlak's continued detention is unconstitutional.

IV.     REASONABLE CONDITIONS CAN BE ESTABLISHED FOR RELEASE.

Should the Court decide to grant Mr. Parlak's petition, the following conditions of release should satisfy the Court and DHS of his continued presence within the Court's jurisdiction:

1. Mr. Parlak promises to appear at all immigration proceedings as required and to surrender for removal upon exhaustion of all appeals on the date of the last reviewing court's final order, pursuant to 8 U.S.C. §1231(a)(1)(A). In the event that the BIA affirms the Immigration Judge's deportation order, Mr. Parlak shall not be required to surrender unless and until the Sixth Circuit denies his motion for a stay of removal pending appeal. If the Sixth Circuit

affirms the order of removal, then Mr. Parlak shall not be required to surrender unless and until the Supreme Court of the United States denies his petition for a writ of *certiorari*.

2. Mr. Parlak will execute a bond or agreement to forfeit upon failing to appear as required cash or designated property valued at $50,000.

3. Mr. Parlak will participate in a tether program and abide by all requirements of the program which will include electronic monitoring or other location verification systems, the cost of such program to be paid by the Government.

4. Mr. Parlak will report once each week, in person or telephonically, to a supervising officer designated by the Government. Jurisdiction for reporting shall be transferred to either the Western District of Michigan or the Northern District of Indiana for the convenience of the parties.[7]

5. Mr. Parlak will restrict travel to the State of Michigan and the Chicago area (where his extended family and attorneys are located). Notification for any travel to the Chicago area will be provided in advance to the supervising officer.

6. Mr. Parlak shall immediately advise the Court and his supervising officer of any change in address (within the state of Michigan) or telephone number.

7. This Court shall maintain jurisdiction over all questions pertaining to Mr. Parlak's custody and the conditions of his release.

## CONCLUSION

For all the above reasons, this Court should grant Mr. Parlak's petition for a writ of

habeas corpus and order his immediate release from custody pursuant to the conditions described

herein.

---

[7]  Since before these removal proceedings began, Mr. Parlak has maintained a relationship with FBI Agent Al DiBrito who is based in St. Joseph, Michigan. Mr. Parlak respectfully requests designation of Mr. DiBrito as his "supervising officer."

Dated:  May 18, 2005

Respectfully submitted,

By _____

Attorneys for Petitioner
IBRAHIM PARLAK
David S. Foster
John J. Marhoefer
Cindy Sobel
LATHAM & WATKINS LLP
233 S. Wacker, Suite 5800
Chicago, IL 60606
(312) 876-7700
(312) 993-9767 (fax)

David A. Nacht  (#P47034)
DAVID A. NACHT, P.C.
201 S. Main St. Suite 1000
Ann Arbor, MI  48104
(734) 663-7550

## EXHIBIT LIST

Exhibit A:    Case summary examples of habeas petitions filed for aliens detained in the Western District of Michigan between August 13, 2003 (Roman) and June 28, 2004 (Padilla).

Exhibit B:    Case summary, docket sheet and order transferring venue to the Western District of Michigan for the habeas petition of Felicien Baptiste, No. 04-70756 (filed May 3, 2004).

Exhibit C:    BICE Detention Documents for Mr. Parlak and the Intergovernmental Services Agreement between the United States and Calhoun County Jail, ordered by and produced for this Court on May 2, 2005.

Exhibit D:    Docket sheets for *pro se* habeas petitioners Kola Oni, No. 04-72565 (filed July 12, 2004), and Ovanda Nicolas, No. 04-72798 (filed July 23, 2004).

Exhibit E:    Docket sheet and Reply to Motion to Dismiss or Transfer Venue for habeas petitioner Elisco Beltran, No. 04-60126 (filed July 15, 2004).

Exhibit F:    Docket sheet, Response to Motion To Dismiss, and Order for habeas petitioner Ilir Demirxhiu, No. 05-10054 (filed Feb. 17, 2005).

**2:03-cv-75061-AJT** Rodriguez v. Dept Homeland
Arthur J. Tarnow, presiding
Date filed: 12/17/2003
Date terminated: 12/30/2003 **Date of last filing:** 12/30/2003

# Case Summary

**Office:** Detroit                          **Filed:** 12/17/2003
**Jury Demand:** None                        **Demand:** $0
**Nature of Suit:** 460                      **Cause:**
**Jurisdiction:** Federal Question           **Disposition:** Dismissed - Other
**County:** Marquette                        **Terminated:** 12/30/2003
**Origin:** 1                                **Reopened:**
**Lead Case:**                               None
**Related Case:**                            None                    **Other Court Case:** None
**Def Custody Status:**
**Flags:** CLOSED, HABEAS, WC

Petitioner **Fernando Rodriguez**   represented   **Caridad P. Cardinale**            **Phone:** 248-619-
                                    by           (Designation Retained)                      0065

Respondent **Department of
Homeland Security**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2005 12:16:04 | | | |
| **PACER Login:** | lw0099 | **Client Code:** | 07568-502434-0000 |
| **Description:** | Case Summary | **Search Criteria:** | 2:03-cv-75061-AJT |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |



https://ecf.mied.uscourts.gov/cgi-bin/qrySummary.pl?39753                     5/13/2005

Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.377   Filed 05/18/05   Page 22 of 50

**2:04-cv-70071-PJD** Berishaj v. Bur Citizenship, et al
Patrick J. Duggan, presiding
**Date filed:** 01/08/2004
**Date terminated:** 03/17/2004 **Date of last filing:** 03/17/2004

# Case Summary

**Office:** Detroit
**Jury Demand:** None
**Nature of Suit:** 460
**Jurisdiction:** U.S. Government Defendant
**County:** Van Buren
**Origin:** 1
**Lead Case:**
**Related Case:**

**Filed:** 01/08/2004
**Demand:** $0
**Cause:**
**Disposition:** Judgment - Motion Before Trial
**Terminated:** 03/17/2004
**Reopened:**
None
None

**Other Court Case:**
None

**Def Custody Status:**
**Flags:** CLOSED, HABEAS, VMM

Petitioner **Vasel Berishaj**

Respondent **Bureau of Citizenship and Immigration Services**

represented by **Richard A. Kulics** (Designation Retained)

represented by **L. Michael Wicks**

Phone:248-594-7989
Fax:   248-594-7989

Phone:313-226-9100
Email: Michael.Wicks@usdoj.gov

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/13/2005 12:16:59 | | |
| **PACER Login:** lw0099 | **Client Code:** | 07568-502434-0000 |
| **Description:** Case Summary | **Search Criteria:** | 2:04-cv-70071-PJD |
| **Billable Pages:** 1 | **Cost:** | 0.08 |



**2:04-cv-70458-BAF-RSW** Taha v. Bureau of Immigration and Customs Enforcement et al
Bernard A Friedman, presiding
Date filed: 02/10/2004
Date terminated: 04/07/2004 **Date of last filing:** 04/07/2004

# Case Summary

**Office:** Detroit
**Jury Demand:** None
**Nature of Suit:** 460
**Jurisdiction:** U.S. Government Defendant
**County:** Calhoun
**Origin:** 1
**Lead Case:**
**Related Case:**
**Def Custody Status:**
**Flags:** CLOSED, HABEAS

**Filed:** 02/10/2004
**Demand:**
**Cause:** No cause code entered
**Disposition:** Dismissed - Other
**Terminated:** 04/07/2004
**Reopened:**
None
None                                    **Other Court Case:** None

| | | | |
|---|---|---|---|
| Petitioner **Fadel Hussein Taha** | represented by | **Robert M. Birach** | Phone:313-964-1234 |
| Respondent **Bureau of Immigration and Customs Enforcement** | represented by | **L. Michael Wicks** | Phone:313-226-9100 Email: Michael.Wicks@usdoj.gov |
| Respondent **Department of Homeland Security** | represented by | **L. Michael Wicks** | Phone:313-226-9100 Email: Michael.Wicks@usdoj.gov |
| Respondent **Attorney General of the United States** | represented by | **L. Michael Wicks** | Phone:313-226-9100 Email: Michael.Wicks@usdoj.gov |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2005 12:17:38 | | | |
| **PACER Login:** | lw0099 | **Client Code:** | 07568-502434-0000 |
| **Description:** | Case Summary | **Search Criteria:** | 2:04-cv-70458-BAF-RSW |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

(3)

Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.379   Filed 05/18/05   Page 24 of 50

**2:04-cv-70723-BAF-RSW** Cabre v. Bureau of Immigration and Customs Enforcement
Bernard A Friedman, presiding
**Date filed:** 02/26/2004
**Date terminated:** 04/19/2004 **Date of last filing:** 10/04/2004

# Case Summary

**Office:** Detroit
**Jury Demand:** None
**Nature of Suit:** 460
**Jurisdiction:** U.S. Government Defendant
**County:** Calhoun
**Origin:** 1
**Lead Case:**
**Related Case:**
**Def Custody Status:**
**Flags:** CLOSED, HABEAS

**Filed:** 02/26/2004
**Demand:**
**Cause:** No cause code entered
**Disposition:** Dismissed - Settled
**Terminated:** 04/19/2004
**Reopened:**
None
None

**Other Court Case:** None

Petitioner **Antonio Cabre**

represented by

**Maia J. Storm**

**Phone:**269-384-5755
**Email:** Gooseko@aol.com

Respondent **Bureau of Immigration and Customs Enforcement**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2005 12:18:10 | | | |
| **PACER Login:** | lw0099 | **Client Code:** | 07568-502434-0000 |
| **Description:** | Case Summary | **Search Criteria:** | 2:04-cv-70723-BAF-RSW |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |



Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.380   Filed 05/18/05   Page 25 of 50

**2:04-cv-71055-DPH-VMM** Khawaja v. Wrona
Denise Page Hood, presiding
Date filed: 03/23/2004
Date terminated: 05/28/2004 Date of last filing: 05/28/2004

# Case Summary

**Office:** Detroit
**Jury Demand:** None
**Nature of Suit:** 460
**Jurisdiction:** U.S. Government
Defendant
**County:** Calhoun
**Origin:** 1
**Lead Case:**
**Related Case:**

**Filed:** 03/23/2004
**Demand:**
**Cause:** No cause code entered
**Disposition:** Judgment - Motion Before
Trial
**Terminated:** 05/28/2004
**Reopened:**
None
None

**Other Court Case:**
None

**Def Custody Status:**
**Flags:** CLOSED, HABEAS

Petitioner **Amjad Juma Khawaja** represented by **Maia J. Storm**    Phone:269-384-5755
Email: Gooseko@aol.com

Respondent **Phillip Wrona**    represented by **Derri T. Thomas** Phone:313-226-9100
Fax:   313-226-9153
Email: derri.thomas@usdoj.gov

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/13/2005 12:23:38 | | | |
| PACER Login: | lw0099 | Client Code: | 07568-502434-0000 |
| Description: | Case Summary | Search Criteria: | 2:04-cv-71055-DPH-VMM |
| Billable Pages: | 1 | Cost: | 0.08 |



Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.381   Filed 05/18/05   Page 26 of 50

**2:04-cv-71522-DPH-SDP** Arora v. Bureau of Immigration and Customs Enforcement
Denise Page Hood, presiding
**Date filed:** 04/22/2004
**Date terminated:** 06/25/2004 **Date of last filing:** 06/25/2004

# Case Summary

**Office:** Detroit
**Jury Demand:** None
**Nature of Suit:** 460
**Jurisdiction:** U.S. Government Defendant
**County:** Calhoun
**Origin:** 1
**Lead Case:**
**Related Case:**
**Def Custody Status:**
**Flag:** CLOSED

**Filed:** 04/22/2004
**Demand:**
**Cause:** No cause code entered
**Disposition:** Dismissed - Settled
**Terminated:** 06/25/2004
**Reopened:**
None
None

**Other Court Case:** None

| | | | |
|---|---|---|---|
| Plaintiff **Andrew Avinash Arora** | represented by | **Maia J. Storm** | **Phone:**269-384-5755<br>**Email:** Gooseko@aol.com |
| Defendant **Bureau of Immigration and Customs Enforcement** | represented by | **Derri T. Thomas** | **Phone:**313-226-9100<br>**Fax:** 313-226-9153<br>**Email:** derri.thomas@usdoj.gov |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2005 12:23:05 | | | |
| **PACER Login:** | lw0099 | **Client Code:** | 07568-502434-0000 |
| **Description:** | Case Summary | **Search Criteria:** | 2:04-cv-71522-DPH-SDP |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

https://ecf.mied.uscourts.gov/cgi-bin/qrySummary.pl?190763

5/13/2005





Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.383   Filed 05/18/05   Page 28 of 50

**2:04-cv-70756-GER-VMM** Baptiste v. Bureau of Immigration and Customs Enforcement
Gerald E Rosen, presiding
**Date filed:** 02/27/2004
**Date terminated:** 04/20/2004 **Date of last filing:** 05/03/2004

# Case Summary

**Office:** Detroit
**Jury Demand:** None
**Nature of Suit:** 460
**Jurisdiction:** U.S. Government Defendant
**County:** Calhoun
**Origin:** 1
**Lead Case:**
**Related Case:**

**Filed:** 02/27/2004
**Demand:**
**Cause:** No cause code entered
**Disposition:** Transfer/Remand - Transfer to Another District
**Terminated:** 04/20/2004
**Reopened:**
None
None

**Other Court Case:**
None

**Def Custody Status:**
**Flags:** CLOSED, HABEAS

Petitioner **Felicien Jean Baptiste**          represented by    **Maia J. Storm**     **Phone:** 269-384-5755
**Email:** Gooseko@aol.com

Respondent **Bureau of Immigration and Customs Enforcement**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2005 12:18:51 | | | |
| **PACER Login:** | lw0099 | **Client Code:** | 07568-502434-0000 |
| **Description:** | Case Summary | **Search Criteria:** | 2:04-cv-70756-GER-VMM |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

(1)

CLOSED, HABEAS

# U.S. District Court
## Eastern District of Michigan (Detroit)
## CIVIL DOCKET FOR CASE #: 2:04-cv-70756-GER-VMM

Baptiste v. Bureau of Immigration and Customs
Enforcement
Assigned to: Honorable Gerald E Rosen
Referred to: Honorable Virginia M Morgan
Cause: No cause code entered

Date Filed: 02/27/2004
Jury Demand: None
Nature of Suit: 460 Deportation
Jurisdiction: U.S. Government
Defendant

**Petitioner**

**Felicien Jean Baptiste**

represented by **Maia J. Storm**
710 Trimble Avenue
P.O. Box 51334
Kalamazoo, MI 49005
269-384-5755
Email: Gooseko@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Bureau of Immigration and Customs
Enforcement**

| Date Entered | # | Docket Text |
|---|---|---|
| 03/02/2004 | 1 | PETITION for Writ of Habeas Corpus filed by Felicien Jean Baptiste against Bureau of Immigration and Customs Enforcement with attachments, Receipt No. 503639.(DHame, ) (Entered: 03/02/2004) |
| 04/14/2004 | 2 | ORDER Requiring Response to 1 Petition for Writ of Habeas Corpus. Response due: 5/10/2004, Motion Hearing set for 6/2/2004 09:45 AM before Honorable Virginia M Morgan. Signed by Judge Virginia M Morgan. (JOwe, ) (Entered: 04/14/2004) |
| 04/21/2004 | 3 | ORDER Referring Pretrial Matters to Magistrate Judge Virginia M Morgan Signed by Judge Gerald E Rosen. (JGilb, ) (Entered: 04/21/2004) |
| 04/24/2004 | 4 | ORDER TRANSFERRING CASE to Western District of Michigan. Signed by Judge Gerald E Rosen. (CGre, ) (Entered: 04/24/2004) |
| 04/26/2004 | 5 | NOTICE Of Transfer to the Western District of Michigan. (CGre, ) (Entered: 04/26/2004) |
| 05/04/2004 | 6 | ACKNOWLEDGEMENT from USDC Western District of Michigan of 4 |

Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.385   Filed 05/18/05   Page 30 of 50

| | | Order Transferring Case. (RHutc, ) (Entered: 05/04/2004) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/13/2005 12:19:14 | | |
| PACER Login: | lw0099 | Client Code: | 07568-502434-0000 |
| Description: | Docket Report | Search Criteria: | 2:04-cv-70756-GER-VMM Documents: 1 |
| Billable Pages: | 1 | Cost: | 0.08 |



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLOSED

FELICIEN JEAN BAPTISTE,

Petitioner,

No. 04-CV-70756-DT

vs.

Hon. Gerald E. Rosen

PHILIP WRONA, BICE
INTERIM DISTRICT DIRECTOR,

Respondent.
_____/

ORDER TRANSFERRING VENUE
TO THE WESTERN DISTRICT OF MICHIGAN

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____**APR 20 2004**_____

PRESENT: Honorable Gerald E. Rosen
United States District Judge

Petitioner Felicien Jean Baptiste has filed a Petition of Write of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2241. Petitioner is in the custody of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("BICE"). He is detained at the Calhoun County Jail in Battle Creek, Michigan. [Petition, ¶ 2.]

Section 2241 provides that a person in federal custody may bring a petition for habeas corpus "**in the district court for the district wherein the person is in custody.**" 28 U.S.C. § 2241(d). Petitioner himself acknowledges this. "Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), **venue lies in the**

United States District Court for the Western District of Michigan. . . ." [Petition, ¶ 6.]

Because Petitioner is in custody in the Western District of Michigan and his attorney is a resident Oshtemo, Michigan, which is in the Western District, the Court finds that justice would be best served by transferring this matter to that district.[1]

Accordingly,

IT IS HEREBY ORDERED that this case be TRANSFERRED to the United States District Court for the Western District of Michigan.

Gerald E. Rosen
United States District Judge

---

[1] *See* 28 U.S.C. § 2241(d) ("The district court for the district wherein [an] application [for a writ of habeas corpus] is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.)

## U.S. Department of Justice



*United States Attorney*
*Eastern District of Michigan*

*211 W. Fort Street*
*Suite 2001*
*Detroit, Michigan 48226*



TO:  _David Nacht; David Foster_

FAX #:_ 734-663-7592; 312-993-9767_

Number of Pages (including cover sheet): .....................__14__

COMMENTS:  _Enclosed is information that was furnished to Judge Cohn at the_

_request of his law clerk, Kim Altman.  Please contact me if you have any questions._

Date: May 2, 2005

FROM:      L. Michael Wicks_
                          Civil Division
                  Phone:  313/226-9760
                  Fax:  313/226-3271.

PRIVILEGED AND CONFIDENTIAL - ALL INFORMATION TRANSMITTED HEREBY IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) NAMED ABOVE IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT(S), PLEASE NOTE THAT ANY DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. ANYONE WHO RECEIVES THIS COMMUNICATION IN ERROR SHOULD NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.



Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.390   Filed 05/18/05   Page 35 of 50

U.S. Department of Justice
Immigration and Naturalization Service

# Notice to EOIR: Alien Address

**File No:** ___A71 803 930___

**Date:** July 29, 2004

**To:** Office of the Immigration Judge
Executive Office for Immigration Review
1155 Brewery Park Blvd, Suite 450
Detroit, MI 48207

**From:** Office of the District Director
Immigration and Naturalization Service
333 Mt. Elliott
Detroit, MI 48207

**Respondent:** _____

This is to notify you that this respondent is:

☐ Currently incarcerated by other than INS. A charging document has been served on the respondent and an immigration Detainer-Notice of Action by the INS (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

_____

_____

His/her anticipated release date is: _____

☒ Currently detained by INS at: __Calhoun County Jail_____

☐ Currently detained by INS and transferred this date to a new location: _____

INS motion for change of venue attached.   ☐ Yes   ☐ No
☐ Released from INS custody on the following condition(s):

☐ Personal Recognizance
☐ Order of Recognizance (Form I-220A)
☐ Bond in the Amount of $_____   ☐ Surety bond   ☐ Cash bond
☐ Other _____

☐ Upon release from INS custody, the respondent reported his/her address and telephone number will be:

_____

_____

☐ Upon release from INS custody, the respondent was reminded of the requirements contained in section 239(a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with an EOIR change of address form (EOIR-33).

_John J. Owens_____        _Sr. Special Agent_____
(Signature of INS official)                (Title of INS official)

_John  Owens_____        _DET/SAE_____
(Printed name of INS official)             (Location)

②

Arrested by John Owen Joint Terrorist Task Force

U.S. Department of Justice

Immigration and Naturalization Service

# Order to Detain or Release Aliens

To: Sheriff
Calhoun County
BATTLE CREEK, MI

Please detain or release the following aliens, as appropriate:

Name / Facility:
CALHOUN County JAIL
Battle Creek, MI

Nature of Proceeding: DEPORTATION

| NAME | AGE | SEX | NATIONALITY | DETAINED | | | RELEASED | | | DAYS |
|------|-----|-----|-------------|----------|------|---------|------|------|--------|--------|
| | | | | Date | Time | Initials | Date | Time | Initials | Detained |
| PARLAK, Ibrahim | 42 | M | TURKEY | 7/29/04 | 4:15 | Jo. | | | | |
| A71-803.930 | | | | | | | | | | |
| | | | | | | | | | | |

Signature of Detention Officer, Sheriff, or Receiving Officer) _____ 7-24-04

Title Deputy 2144

Signature of Officer Detaining Alien SISA John Owen   7/29/04

Title   Station ICE/DT, JTTF

Form I-203A (3-15-75)

③



**Office of the Sheriff, Calhoun County, Michigan**
**Correctional Facility**

## AUTHORITY TO DETAIN

Arresting/Transporting officer must fill in ALL appropriate information. Attach all pertinent paperwork (LEIN work, warrant, court papers, etc.) to this form.

Date __7/29/04__        Time __1125__        B.A.C._____

INMATE NAME: __Porlak__        __Ibrahim_____
              Last                First          Middle        Suffix

ADDRESS: __DICE_____
              Street          City          State        Zip

DOB: __5/1/62__    RACE/SEX: __A/M__    PHONE #: _____

CHARGES:    M (F) C                                          LOCAL
                                                             ORDINANCE
                                                             (Y/N)
1. __Immigration hold_____ COMP#(S) _____

2. _____

3. _____

4. _____

5. _____

**GIVE BRIEF DESCRIPTION OF UNUSUAL ARREST SITUATION/BEHAVIOR:**

_____

_____

_____

**VEHICLE IMPOUND INFORMATION:**
    Towed by/to: _____

    Hold:    YES    NO

__Owen - DICE_____
**ARRESTING OFFICER & DEPARTMENT**        (Please Print)

__Dexter Mateko_____
**RECEIVING OFFICER & I.D. NUMBER**        (Please Print)

JA-02 REV. 10/99

(4)

CHIEF COUNSEL-DETROIT · US ATTY 8/15 PAGE 02

04/28/05 12:03 FAX 313 588 6035

09/16/2004 18:12 6169695489 CALHOUN CO SHERIFF

**United States Department of Justice**

**United States Marshals Service**

**Intergovernmental Service Agreement**
*Housing of Federal Prisoners*

Page 1 of ...

| | | |
|---|---|---|
| **1. AGREEMENT NUMBER** 40-01-0014 | **2. EFFECTIVE DATE** 11/1/00 | **3. REQUEST FOR DETENTION SERVICES (RDS) NO.** 042-01 |

**ISSUING OFFICE**

UNITED STATES MARSHALS SERVICE
PRISONER SERVICES DIVISION
600 ARMY NAVY DRIVE
ARLINGTON, VA 22202-4210

**5. LOCAL GOVERNMENT**

FACILITY CODE(S)  5CN

NAME AND ADDRESS

Calhoun County Jail
161 E. Michigan Avenue
Battle Creek, MI 49014

Contact Person Allen L. Byam, Sheriff
Area Code & Telephone No.▶(616) 969-6442

**6. APPROPRIATION DATA**
15X1020

| 7. ITEM NO. | 8. SUPPLIES/SERVICES | 9. QUANTITY | 10. UNIT | 11. UNIT PRICE | 12. AMOUNT |
|---|---|---|---|---|---|
| | This agreement is for the housing, safekeeping, and subsistence of federal prisoners, in accordance with the contents set forth herein. | ESTIMATED USMS PRISONER DAYS  3,000 | PDs | FIXED PER DIEM RATE  $51.25 | ESTIMATED ANNUAL PAYMENT  $153,750.00 |
| | | ESTIMATED GUARD HRS  50 | GHs | $18.00 | $900.00 |
| | Mileage reimbursement per GSA Travel Regulations. | 100 | MIs | | |
| | The Intergovernmental Agreement Number J-C40-M-040 is canceled and the new number is as stated in Block No. 1. | | | | |

**13. AGENCY CERTIFYING**

*To the best of my knowledge and belief, data submitted in support of this agreement is true and correct, the document has been duly authorized by the governing body of the Department or Agency and the Department or Agency will comply with ALL PROVISIONS SET FORTH HEREIN.*

**14. NAME AND TITLE OF LOCAL GOVERNMENT AUTHORIZED TO SIGN AGREEMENT**

SIGNATURE _____ DATE 1/9/01

NAME (Type or Print) Allen Byam  TITLE Sheriff

**15. PRISONER TYPE TO BE INCLUDED**

UNSENTENCED
☒ Adult Male
☒ Adult Female
☐ Juvenile
☒ INS

SENTENCED
☒ Adult Male
☒ Adult Female
☐ Juvenile
☒ BOP

**16. LEVEL OF USE**
☐ Minimum (0-249)
☐ Medium (250-999)
☒ Major (1000 +)

**17. NAME OF AUTHORIZING OFFICIAL**

Debra Brusvic
NAME (Type or Print)

(SIGNATURE OF CONTRACTING OFFICER)

DATE: 11/27/00

FORM USM-
(Rev. 3/99)

PRIOR EDITIONS ARE OBSOLETE AND ARE NOT TO BE USED

(5)

## U.S. Department of Justice
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 2 of 10 |
|---|---|---|

### ARTICLE I - PURPOSE AND SECURITY PROVIDED

The purpose of this Intergovernmental Service Agreement (IGA) is to establish a formal binding relationship between the United States Marshals Service (USMS) and other federal user agencies (the Federal Government) and Calhoun County (the Local Government) for the detention of persons charged with or convicted of violations of federal law or held as material witnesses (federal prisoners) at the Calhoun County Jail (the facility).

The Local Government agrees to accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local law, standards, policies, procedures, or court orders applicable to the operations of the facility. The USMS considers all federal prisoners medium/maximum security-type prisoners that are housed within the confines of the facility, at a level appropriate for prisoners considered a risk of flight, a danger to the community, or wanted by other jurisdictions.

### ARTICLE II - ASSIGNMENT AND CONTRACTING OF PROJECT-SUPPORTED EFFORT

1. Neither this agreement nor any interest therein may be assigned or transferred to any other party without prior written approval by the USMS.

2. None of the principal activities of the project-supported effort shall be contracted out to another organization without prior approval by the USMS. Where the intention to award contracts is made known at the time of application, the approval may be considered granted if these activities are funded as proposed.

3. All contracts or assignments must be formalized in a written contract or other written agreement between the parties involved.

4. The contract or agreement must, at a minimum, state the services to be performed, period of performance, the policies and procedures, and the flow-through requirements that are applicable to the contractor or other recipient. The contract or agreement must include the dollar limitation and the cost principles to be used in determining allowable costs. The contract or other written agreement must not affect the recipient's overall responsibility for the duration of the project and accountability to the government.

### ARTICLE III - MEDICAL SERVICES

1. The Local Government agrees to provide federal prisoners with the same level of medical care and services provided by a medical practitioner to local prisoners, including the transportation and security for prisoners requiring removal from the facility for emergency medical services. The IGA jail shall not incur a bill to be paid by the USMS without USMS approval. All costs associated with health care services provided inside the facility are included in the fixed per diem rate.

2. The Local Government agrees to notify the United States Marshal (USM) as soon as possible of all emergency medical cases requiring removal of a prisoner from the facility and to obtain prior authorization for removal for all other medical services required. All costs associated with hospital or health care

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 3 of 10 |
|---|---|---|

services provided outside the facility will be paid directly by the Federal Government. In the event the Local Government has a contract with a medical facility/physician or receives discounted rates, the federal prisoners shall be charged the same rate as local prisoners.

3.    When a federal prisoner is being transferred via the USMS airlift, he/she will be provided with three (3) to seven (7) days of prescription medication which will be dispensed from the detention facility. When possible, generic medications should be prescribed.

4.    Medical records must travel with the federal prisoner. If the records are maintained at a medical contractor's facility, it is the detention facility's responsibility to obtain them before a federal prisoner is moved.

5.    Federal prisoners will not be charged and are not required to pay their own medical expenses. These expenses will be paid by the Federal Government.

6.    The Local Government agrees to notify the USM as soon as possible when a federal prisoner is involved in an escape, attempted escape, or conspiracy to escape from the facility.

## ARTICLE IV - RECEIVING AND DISCHARGE

1.    The Local Government agrees to accept as federal prisoners those persons committed by federal law enforcement officers for violations of federal laws only upon presentation by the officer of proper law enforcement credentials.

2.    The Local Government agrees to release federal prisoners only to law enforcement officers of agencies initially committing the prisoner (i.e., DEA, INS, etc.) or to a Deputy USM. Those prisoners who are remanded to custody by a USM may only be released to a USM or an agent specified by the USM of the Judicial District.

3.    The Federal Government agrees to maintain federal prisoner population levels at or below the level established by the facility administrator.

4.    Federal prisoners may not be released from the facility or placed in the custody of state or local officials for any reason except for medical emergency situations. Federal prisoners sought for a state or local court proceeding must be acquired through a Writ of Habeas Corpus or the Interstate Agreement of Detainers and then only with the concurrence of the District USM.

## ARTICLE V - PERIOD OF PERFORMANCE

This agreement shall be in effect indefinitely until terminated in writing by either party. Should conditions of an unusual nature occur making it impractical or undesirable to continue to house prisoners, the Local Government may suspend or restrict the use of the facility by giving written notice to the USM. Such notice will be provided thirty (30) days in advance of the effective date of formal termination and at least two (2) weeks in advance of a suspension or restriction of use unless an emergency situation requires the immediate relocation of prisoners.

Form USM 2410
(Rev. 3/99)

(7)

05/02/05  10:08 FAX 313 226 3271      US ATTY.-CIVIL DIV _____      @008/014

Case 2:05-cv-70826-AC-RSW  ECF No. 15, PageID.396  Filed 05/18/05  Page 41 of 50

04/28/05  12:04 FAX 313 568 6035      CHIEF COUNSEL-DETROIT      4 US ATTY BAG      PAGE  05
08/16/2004  18:12    6169696459      CALHOUN CO SHERIFF

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No.  4 of 10 |

## ARTICLE VI - PER DIEM RATE AND ECONOMIC PRICE ADJUSTMENT

1.   Per diem rates shall be established on the basis of actual and allowable costs associated with the operation of the facility during a recent annual accounting period.

2.   The Federal Government shall reimburse the Local Government at the per diem rate identified on page one (1) of this agreement.  The rate may be renegotiated not more than once per year, after the agreement has been in effect for twelve (12) months.

3.   The rate covers one (1) person per "prisoner day."  The Federal Government may not be billed for two (2) days when a prisoner is admitted one evening and removed the following morning.  The Local Government may bill for the day of arrival, but not for the day of departure.

4.   When a rate increase is desired, the Local Government shall submit a written request to the USM at least sixty (60) days prior to the desired effective date of the rate adjustment.  All such requests must contain a completed Cost Sheet for Detention Services (USM-243) which can be obtained from the USM. The Local Government agrees to provide additional cost information to support the requested rate increase and to permit an audit of accounting records upon request of the USMS.

5.   Criteria used to evaluate the increase or decrease in the per diem rate shall be those specified in the Office of Management and Budget (OMB) Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments.

6.   The effective date of the rate modification will be negotiated and specified on the IGA Modification form approved and signed by a USMS Contract Specialist.  The effective date will be established on the first day of the month for accounting purposes.  Payments at the modified rate will be paid upon the return of the signed modification by the authorized Local Government official to the USM.

## ARTICLE VII - BILLING AND FINANCIAL PROVISIONS

1.   The Local Government shall prepare and submit original and separate invoices each month to the federal agencies listed below for certification and payment.

U.S. MARSHALS SERVICE
WESTERN DISTRICT OF MICHIGAN
544 FEDERAL BUILDING
110 MICHIGAN AVENUE
GRAND RAPIDS, MI 49503
(616) 254-2438

FEDERAL BUREAU OF PRISONS
COMMUNITY CORRECTIONS OFFICE
1850 FEDERAL BUILDING
477 MICHIGAN AVENUE
DETROIT, MI 48226
(313) 226-6186

IMMIGRATION AND NATURALIZATION
EASTERN REGIONAL OFFICE
DETENTION AND DEPORTATION DIVISION
70 KIMBALL AVENUE
S. BURLINGTON, VT 05403-6813
(802) 951-6428

Form USM 3410
(Rev. 3/99)



05/02/05 10:08 FAX 313 226 3271 US ATTY.-CIVIL DIV @009/014

Case 2:05-cv-70826-AC-RSW ECF No. 15, PageID.397 Filed 05/18/05 Page 42 of 50

04/28/05 12:04 FAX 313 568 6035 CHIEF COUNSEL-DETROIT US ATTY BAS PAGE 06
08/16/2004 18:12 6169696459 CALHOUN CO SHERIFF

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 5 of 10 |
| --- | --- | --- |

2. To constitute a proper monthly invoice, the name and address of the facility, the name of each federal prisoner, their specific dates of confinement, the total days to be reimbursed, the appropriate per diem rate as approved in the IGA, and the total amount billed (total days multiplied by the rate per day) shall be listed. The name, title, complete address, and phone number of the local official responsible for invoice preparation should also be listed on the invoice.

3. The Prompt Payment Act, Public Law 97-177 (96 stat. 85, 31 USC 1801), is applicable to payments under this agreement and requires the payment to the Local Government of interest on overdue payments. Determinations of interest due will be made in accordance with the provisions of the Prompt Payment Act and 5 CFR, Part 1315.

4. Payment under this agreement will be due on the thirtieth (30th) calendar day after receipt of a proper invoice, in the office designated to receive the invoice. If the due date falls on a non-working day (e.g., Saturday, federal holiday), then the due date will be the next working day. The date of the check issued in payment shall be considered to be the date payment is made.

**NOTE: RATES NOT SPECIFIED IN THE AGREEMENT WILL NOT BE AUTHORIZED FOR PAYMENT.**

## ARTICLE VIII - SUPERVISION AND MONITORING RESPONSIBILITY

All recipients receiving direct awards from the USMS are responsible for the management and fiscal control of all funds. Responsibilities include the accounting of receipts and expenditures, cash management, the maintaining of adequate financial records, and the refunding of expenditures disallowed by audits.

## ARTICLE IX - ACCOUNTING SYSTEMS AND FINANCIAL RECORDS

1. The recipient shall be required to establish and maintain accounting systems and financial records that accurately account for the funds awarded. These records shall include both federal funds and all matching funds of state, local, and private organizations. State and local recipients shall expend and account for funds in accordance with state laws and procedures for expending and accounting for its own funds, as well as meet the financial management standards in 28 Code of Federal Regulations (CFR), Part 66, and current revisions of OMB Circular A-87.

2. Recipients are responsible for complying with OMB Circular A-87 and 28 CFR, Part 66, and the allowability of the costs covered therein (submission of Form USM-243). To avoid possible subsequent disallowance or dispute based on unreasonableness or unallowability under the specific cost principles, recipients must obtain prior approval on the treatment of special or unusual costs.

Form USM-241L
(Rev. 3/99)

9

04/28/05 12:05 FAX 313 868 6035 CHIEF COUNSEL-DETROIT → US ATTY BAS PAGE 07
08/16/2004 18:12 6169696459 CALHOUN CO SHERIFF

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 6 of 10 |
|---|---|---|

3.    Changes in IGA facilities: The USMS shall be notified by the recipient of any significant change in the facility, including significant variations in inmates populations, which causes a significant change in the level of services under this IGA. The notification shall be supported with sufficient cost data to permit the USMS to equitably adjust the per diem rates included in the IGA. Depending on the size of the facility for purposes of assessing changes in the population, a 10% increase or decrease in the prison population shall be a "significant increase or decrease" for purposes of this subsection.

## ARTICLE X - MAINTENANCE AND RETENTION OF RECORDS AND ACCESS TO RECORDS

1.    In accordance with 28 CFR, Part 66, all financial records, supporting documents, statistical records, and other records pertinent to contracts or sub-awards awarded under this IGA shall be retained by each organization participating in the program for at least three (3) years for purposes of federal examination and audit.

2.    The 3-year retention period set forth in paragraph one (1) above, begins at the end of the first year of completion of service under the IGA. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the 3-year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular 3-year period, whichever is later.

3. Access to Records: The USMS and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers, or other records of recipients or its sub-recipients/contractors, which are pertinent to the award, in order to make audits, examinations, excerpt, and transcripts. The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.

4.    Delinquent Debt Collection: The USMS will hold recipient accountable for any overpayment, audit disallowance, or any breach of this agreement that results in a debt owed to the Federal Government. The USMS may apply interest, penalties, and administrative costs to a delinquent debt owed by a debtor pursuant to the Federal Claims Collection Standards.

## ARTICLE XI - GOVERNMENT FURNISHED PROPERTY

1.    It is the intention of the USMS to furnish excess federal property to local governments for the specific purpose of improving jail conditions and services. Accountable excess property, such as furniture and equipment, remains titled to the USMS and shall be returned to the custody of the USMS upon termination of the agreement.

2.    The Local Government agrees to inventory, maintain, repair, assume liability for, and manage all federally provided accountable property as well as controlled excess property. Such property cannot be removed from the jail without the prior written approval of USMS Headquarters. The loss or destruction of any such excess property shall be immediately reported to the USM and USMS Headquarters. Accountable and controlled excess property includes any property with a unit acquisition value of $1,000 or more, all furniture, as well as equipment used for security and control, communication, photography, food service, medical care, inmate recreation, etc.

Form USM-241E
(Rev. 3/99)

(10)

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No.40-01-0014 | Page No. 7 of 10 |
|---|---|---|

3.   The suspension of use or restriction of bedspace made available to the USMS are agreed to be grounds for the recall and return of any or all government furnished property.

4.   The dollar value of property provided each year will not exceed the annual dollar payment made by the USMS for prisoner support unless a specific exemption is granted by the Chief, Prisoner Services Division, USMS Headquarters

5.   It is understood and agreed that the Local Government shall fully defend, indemnify, and hold harmless the United States of America, its officers, employees, agents, and servants, individually and officially, for any and all liability caused by any act of any member of the Local Government or anyone else arising out of the use, operation, or handling of any property (to include any vehicle, equipment, and supplies) furnished to the Local Government in which legal ownership is retained by the United States of America, and to pay all claims, damages, judgments, legal costs, adjuster fees, and attorney fees related thereto. The Local Government will be solely responsible for all maintenance, storage, and other expenses related to the care and responsibility for all property furnished to the Local Government.

## ARTICLE XII - MODIFICATIONS/DISPUTES

1.   Either party may initiate a request for modification to this agreement in writing.  All modifications negotiated will be written and approved by a USMS Contracting Officer and submitted to the Local Government on form USM 241a for approval.

2.   Disputes, questions, or concerns pertaining to this agreement will be resolved between the USM and the appropriate Local Government official.  Space guarantee questions along with any other unresolved issues are to be directed to the Chief, Prisoner Services Division.

## ARTICLE XIII - INSPECTION

The Local Government agrees to allow periodic inspections of the facility by USMS Inspectors.  Findings of the inspection will be shared with the facility administrator in order to promote improvements to facility operations, conditions of confinement, and levels of services.  The mandatory minimum conditions of confinement which are to be met during the entire period of the IGA agreement are:

1.   Adequate, trained jail staff will be provided 24 hour a day to supervise prisoners.  Prisoners will be counted at least once on every shift, but at least twice in every 24-hour period.  One of the counts must be visual to validate prisoner occupancy.

2.   Jail staffing will provide full coverage of all security posts and full surveillance of inmates.

3.   Jail will provide for three meals per day for prisoners.  The meals must meet the nationally recommended dietary allowances published by the National Academy of Sciences.

Form USM-241 ?
(Rev. 3/99)



05/02/05  10:10 FAX 313 226 3271     US ATTY.-CIVIL DIV                    @012/014

Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.400   Filed 05/18/05   Page 45 of 50

04/28/05  12:06 FAX 313 568 6035     CHIEF COUNSEL-DETROIT  → US ATTY EAS       PAGE  09
08/16/2004  16:12     6169696459     CALHOUN CO SHERIFF

# U.S. Department of Justice
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 8 of 10 |
|---|---|---|

4.  Jail will provide 24-hour emergency medical care for prisoners.

5.  Jail will maintain an automatic smoke and fire detection and alarm system, and maintain written policies and procedures regarding fire and other safety emergency standards.

6.  Jail will maintain a water supply and waste disposal program that is certified to be in compliance with applicable laws and regulations

## ARTICLE XIV - CONFLICT OF INTEREST

Personnel and other officials connected with the agreement shall adhere to the requirements given below:

1.  Advice. No official or employee of the recipient, a sub-recipient, or a contractor shall participate personally through decisions, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise in any proceeding, application, request for a ruling or other determination, contract, grant, cooperative agreement, claim, controversy, or other particular matter in which Department of Justice funds are used, where to his/her knowledge, he/she or his/her immediate family, partner, organization other than a public agency in which he/she is serving as an officer, director, trustee, partner, or employee, or any person or organization with whom he/she is negotiating or has any arrangement concerning prospective employment, has a financial interest, or less than an arms-length transaction.

2.  Appearance. In the use of Department of Justice project funds, officials or employees of the recipient, a sub-recipient or a contractor, shall avoid any action which might result in, or create the appearance of:

   a.  Using his or her official position for private gain;
   b.  Giving preferential treatment to any person;
   c.  Losing complete independence or impartiality;
   d.  Making an official decision outside official channels; or
   e.  Affecting adversely the confidence of the public in the integrity of the government or the program.

## ARTICLE XV - GUARD/TRANSPORTATION SERVICES TO MEDICAL FACILITY

1.  The Local Government agrees, upon request of the Federal Government in whose custody a prisoner is held, to provide:

   a.  Transportation and escort guard services for federal prisoners housed at their facility to and from a medical facility for outpatient care, and

   b.  Transportation and stationary guard services for federal prisoners admitted to a medical facility.

2.  Such services will be performed by qualified law enforcement or correctional officer personnel employed by the Local Government under their policies, procedures, and practices. The Local Government agrees to augment such practices as may be requested by the USM to enhance specific requirement for security, prisoner monitoring, visitation, and contraband control.

Form USM-241H
(Rev. 3/99)

(12)

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 9 of 10 |
|---|---|---|

3.    The Local Government will continue to be liable for the actions of its employees while they are transporting federal prisoners on behalf of the USMS. Further, the Local Government will also continue to provide workers' compensation to its employees while they are providing this service. It is further agreed that the local jail employees will continue to act on behalf of the Local Government in providing transportation to federal prisoners on behalf of the USMS.

4.    Furthermore, the Local Government agrees to hold harmless and indemnify the USMS and its officials in their official and individual capacities from any liability, including third-party liability or workers' compensation, arising from the conduct of the local jail employees during the course of transporting federal prisoners on behalf of the USMS.

5.    The Federal Government agrees to reimburse the Local Government at the rate stipulated on page one (1) of this agreement.

## ARTICLE XVI - GUARD/TRANSPORTATION SERVICES TO U.S. COURTHOUSE

1.    The Local Government agrees upon request of the USM in whose custody a prisoner is held, to provide transportation and escort guard services for federal prisoners housed at their facility to and from the U.S. Courthouse. The Local Government agrees to the following:

   a.    Transportation and escort guard services will be performed by at least two (2) armed qualified officers employed by the Local Government under their policies, procedures, and practices, and will augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, and contraband control;

   b.    Upon arrival at the courthouse, transportation and escort guard will turn federal prisoners over to Deputy U.S. Marshals only upon presentation by the deputy of proper law enforcement credentials;

   c.    The Local Government will not transport federal prisoners to any U.S. Courthouse without a specific request from the USM who will provide the prisoner's name, the U.S. Courthouse, and the date the prisoner is to be transported.

2.    Each prisoner will be restrained in handcuffs, waist chains, and leg irons during transportation.

3.    Such services will be performed by qualified law enforcement or correctional officer personnel employed by the Local Government under their policies, procedures, and practices. The Local Government agrees to augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, visitation, and contraband control.

4.    The Local Government will continue to be liable for the actions of its employees while they are transporting federal prisoners on behalf of the USMS. Further, the Local Government will also continue to provide workers' compensation to its employees while they are providing this service. It is further agreed that the local jail employees will continue to act on behalf of the Local Government in providing transportation to federal prisoners on behalf of the USMS.

Form USM-241B
(Rev. 3/99)

(13)

05/02/05  10:11 FAX 313 226 3271      US ATTY.-CIVIL DIV                           @014/014
Case 2:05-cv-70826-AC-RSW  ECF No. 15, PageID.402  Filed 05/18/05  Page 47 of 50
                                        CHIEF COUNSEL-DETROIT      US ATTY BAG        PAGE  11

04/28/05  12:06 FAX 313 868 6035
08/15/2004 18:12    6169696459

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 40-01-0014 | Page No. 10 of 10 |
|---|---|---|

5.    Furthermore, the Local Government agrees to hold harmless and indemnify the USMS and its officials in their official and individual capacities from any liability, including third-party liability workers' compensation, arising from the conduct of the local jail employees during the course of transporting federal prisoners on behalf of the USMS.

6.    The Federal Government agrees to reimburse the Local Government at the rate specified on page one (1) of this agreement

Form USM-241S
(Rev. 3/99)



Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.404   Filed 05/18/05   Page 49 of 50

CLOSED

# U.S. District Court
## Eastern District of Michigan (Detroit)
### CIVIL DOCKET FOR CASE #: 2:04-cv-72565-LPZ-DAS

| | |
|---|---|
| Oni v. Bureau of Immigration and Customs Enforcement | Date Filed: 07/12/2004 |
| Assigned to: Honorable Lawrence P Zatkoff | Jury Demand: None |
| Referred to: Honorable Donald A Scheer | Nature of Suit: 460 Deportation |
| Cause: No cause code entered | Jurisdiction: U.S. Government Defendant |

**Petitioner**

**Kola Oni**              represented by **Kola Oni**
Chippewa County Jail
325 Court Street
Sault Sainte Marie, MI 49783
PRO SE

V.

**Respondent**

**Bureau of Immigration and Customs Enforcement**              represented by **L. Michael Wicks**
*Robin Baker, District Director*              United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3211
313-226-9100
Email: Michael.Wicks@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Entered | # | Docket Text |
|---|---|---|
| 07/16/2004 | 1 | PETITION for Writ of Habeas Corpus filed by Kola Oni against Bureau of Immigration and Customs Enforcement, Receipt No. 510355. (KGeha, ) (Entered: 07/16/2004) |
| 07/21/2004 | 2 | MOTION to Dismiss by Bureau of Immigration and Customs Enforcement. (Wicks, L.) (Entered: 07/21/2004) |
| 07/22/2004 | 3 | ORDER directing service without prepayment of cost and authorizing US Marshal to collect costs after service is made Signed by Honorable Lawrence P Zatkoff. (KGeha, ) (Entered: 07/22/2004) |
| 08/18/2004 | 4 | ORDER TRANSFERRING CASE to USDC Western District of Michigan. Signed by Honorable Lawrence P Zatkoff. (KGeha, ) (Entered: 08/18/2004) |
| 08/18/2004 | 5 | NOTICE transferring case to Western District of Michigan. Certified |

Case 2:05-cv-70826-AC-RSW   ECF No. 15, PageID.405   Filed 05/18/05   Page 50 of 50

copy of transfer order, certified copy of docket sheet sent. (KGeha, )
(Entered: 08/18/2004)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/13/2005 10:20:39 | | | |
| PACER Login: | lw0099 | Client Code: | 07568-502434-0000 |
| Description: | Docket Report | Search Criteria: | 2:04-cv-72565-LPZ-DAS Documents: 1 |
| Billable Pages: | 1 | Cost: | 0.08 |