UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IBRAHIM PARLAK,

       Petitioner,

v.                                                        Case No. 05-70826

ROBIN BAKER, Detroit Field                    HONORABLE AVERN COHN
Office Director, U.S. Immigration and
Customs Enforcement,

       Respondent.

_____/

## MEMORANDUM AND ORDER GRANTING PETITION FOR HABEAS CORPUS

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2241.  Petitioner Ibrahim Parlak is

challenging his continued detention by the United States Customs and Immigration

Enforcement (ICE) pending the completion of removal proceedings.  Respondent is

Robin Baker, the District Director of the Detroit Field Office of ICE.  ICE has placed

Petitioner in the Calhoun County Jail in Battle Creek, Michigan pursuant to a contract

with ICE.[1]  Petitioner says his seven month detention pending completion of removal

proceedings violates his statutory and due process rights.  Respondent asserts that

petition must be dismissed for lack of jurisdiction, or in the alternative, the case must be

transferred to the Western District of Michigan because venue is not proper in the

Eastern District of Michigan.  Respondent also says that Petitioner's continued

_____

[1]Calhoun county is located in the Western District of Michigan.

detention does not violate his statutory or due process rights.  In other words, Respondent says Petitioner's claims fail on the merits.

For the reasons that follow, the Court finds that Petitioner's continued detention in the circumstances present here violates his constitutional rights.  Accordingly, the petition is GRANTED.  Petitioner shall be released from custody subject to the posting of a $50,000.00 cash bond and such other reasonable conditions to be agreed upon by the parties or upon order of the Court after a request for a hearing.

## II. Background

Petitioner is a native of Turkey.  He was born in 1962 in the primarily Kurdish province of Gaziantep.  On March 19, 1990, Petitioner was convicted by a now-dissolved Turkish Security Court of Kurdish separatism.  He was sentenced to 4 years and 2 months imprisonment and was released from prison the same day of his conviction for time served after having spent 17 months in jail, apparently because he cooperated with the government.  The conviction stemmed from events in 1988 involving a gun fight between Kurdish separatists and Turkish soldiers and in which two Turkish soldiers were killed.[2]

Petitioner left Turkey on April 13, 1991 and entered the United States as a non-immigrant in transit on a C-1 visa.[3]  On July 12, 1992, he was granted asylum.  The basis for his asylum claim was his support for the Kurdistan Workers Party, known as

---

[2]The Kurdish population of Turkey has long been at odds with the Turkish government because of the failure of the government to recognize Kurdistan as a separate country.  See Ismet G. Imset, The PKK: Freedom Fighters or Terrorists? (Dec. 7, 1995), available at www.kurdistan.org/Articles/ismet.html.

[3]It is not clear from the papers what a C-1 visa is.

the PKK, against the Turkish government.[4] On June 4, 1994, he adjusted his status to lawful permanent resident.  On August 24, 1998, he filed an application for naturalization.  On November 28, 2001, his application was denied.

Petitioner has lived in Harbert, Michigan located in southwest Michigan since 1994.  He owns a home, a restaurant, and is the father of a seven year old daughter.[5] There is no evidence that Petitioner has ever been convicted of a crime in the United States.

On April 2, 2002, the INS issued Petitioner a Form I-862 Notice to Appear placing him in removal proceedings and charging him with being removable under 8 U.S.C. § 1227(a)(1)(A) because Petitioner made false statements on his adjustment of status application regarding whether he had ever been arrested or imprisoned and whether the had ever engaged in terrorist activity.  The INS claimed that Petitioner had previously been arrested and imprisoned in Turkey in 1988 on suspicion of being a member of the PKK.[6]  The INS also alleged that Petitioner was not eligible to adjust his status at the time he did because he was not a refugee.  He was not taken into custody based on these charges.

On or about October 9, 2003, Turkey revoked Petitioner's citizenship.

---

[4]The PKK was founded in 1978 primarily composed of Turkish Kurds.  The group has long sought autonomy for the Kurdish people.  See FAS Intelligence Resource Program on the PKK, available at www.fas.org/irp/world/para/pkk.html.

[5]As will be explained, it is clear from the record that Petitioner is both well-established and well-liked in the Harbert community and has substantial support among his neighbors.

[6]In 1997, the United States designated the PKK as a Foreign Terrorist Organization pursuant to 8 U.S.C. § 1189.

3

On February 11, 2004, a hearing was held at which Petitioner denied the charges for removability.  He also asserted that his activities in support of the Kurds in Turkey were not those of a terrorist.

On April 26, 2004, prior to a decision on removability, ICE filed a motion to reopen the evidence.  ICE asserted that it had additional documents relating to the criminal charges against Petitioner in Turkey for being a member of the PKK and that the Turkish government had an ongoing criminal investigation against Petitioner for membership in the PKK.  The documents also allegedly showed that Petitioner's 1990 conviction stemmed from the death of the two Turkish soldiers in 1988.

On July 22, 2004, ICE submitted evidence that Petitioner was re-sentenced in absentia in Turkey on March 16, 2004 to 6 years imprisonment because of his role in the 1988 killing of the two Turkish soldiers in his capacity as group administrator of the PKK.  The Turkish court, however, reduced a possible life sentence to 6 years because Petitioner had cooperated and suspended a portion of the sentence, mandating that Petitioner serve only 1/5 of his sentence, which Petitioner has already served.  Thus, Petitioner's re-sentencing did not subject him to any additional incarceration.

On July 27, 2004, ICE issued a Form I-286 Notice of Custody Determination ordering Petitioner into custody.  On July 29, 2004, ICE took Petitioner into custody.

On August 5, 2004, ICE filed two additional charges against Petitioner, claiming that he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony based on the conviction in Turkey.

On August 10, 2004, an Immigration Judge conducted a bond hearing and continued Petitioner's detention.  In a written decision, the Immigration Judge found that

4

Petitioner was subject to mandatory detention, not because of the charges of
removability, but rather because there was "reason to believe" that Petitioner is an alien
described under section 237(a)(4) of the Act, 8 U.S.C. §1227(a)(4)(B), which provides:

> Any alien who has engaged, or at any time after admission engages in
> any terrorist activity (as defined in section 1132(a)(3)(B)(iv) of this title) is
> deportable.

Under applicable regulations, 8 C.F.R. § 1003.19(H)(2)(i)(C), the Immigration Judge
found that it could not redetermine Petitioner's custody status because he was an alien
described under § 1227(a)(4)(B).  In other words, the Immigration Judge found that it
had no authority to release Petitioner.  The Immigration Judge then went on to explain
why there was reason to believe Petitioner had engaged in terrorist activities.  The
Immigration Judge also noted that because of this, Petitioner was subject to mandatory
detention.  The Immigration Judge also noted that while there was evidence of
Petitioner's ties to the community, he was a flight risk because he has fled Turkey years
ago, provided inaccurate information to support his claim for asylum, and faced the
possibility of deportation to Turkey.

Petitioner appealed the bond decision to the Board of Immigration Appeals (BIA).

On October 14, 2004, while his appeal was pending, ICE filed an additional
charge of removability against Petitioner, now charging him with multiple terrorist activity
under 8 U.S.C. § 1227(a)(4).

On November 23, 2003, the BIA affirmed the Immigration Judge's detention
decision, finding that the Immigration Judge lacked jurisdiction to redetermine
Petitioner's custody because Petitioner had not established that ICE was substantially
unlikely to prevail on the (newly-added) charge of removability, i.e. that Petitioner had

engaged in terrorist activity.

Thus, Petitioner faces removal based on the following charges, the latter two which were added during the course of bond review proceedings:

1.  Removable under 8 U.S.C. § 1227(a)(1)(A) because Petitioner made false statements on his adjustment of status application regarding whether he had ever been arrested or imprisoned and whether he had engaged in terrorist activity

2.  Removable under 8 U.S.C. § 1227(a)(1)(A) because Petitioner was not eligible to adjust his status at the time he did because he was not a refugee

3.  Removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for being an aggravated felon

4.  Removable under 8 U.S.C. § 1227(a)(4)(B) for engaging in terrorist activities

On December 6, 2004 and December 7, 2004, an Immigration Judge conducted a removal hearing on all of the removal charges and on Petitioner's application for deferral of removal under the United Nations Convention Against Torture.  On December 29, 2004, the immigration judge issued a lengthy written decision sustaining all of the charges of removability, denied Petitioner's deferral application, and ordered him removed to Turkey.  Petitioner has filed an appeal of this removal decision to the BIA, where it is pending.  The appeal is proceeding on a expedited basis; briefing is now complete.

III.  Analysis

A.  Jurisdiction

Respondent says that the Court lacks jurisdiction over the proper respondent in this case and that venue is improper in this district.  In a habeas corpus proceeding under 28 U.S.C. § 2241, the appropriate forum is governed by two factors: (1) whether the court has personal jurisdiction over petitioner's custodian; and (2) whether petitioner

6

satisfies traditional venue considerations.  A court has personal jurisdiction "so long as

the custodian can be reached by service of process."  <u>Braden v. 30th Judicial Circuit</u>

<u>Court of Kentucky</u>, 410 U.S. 484, 495 (1973); Section 2243 of Title 28 requires the writ

of habeas corpus to be directed to the "person having custody of the person detained,"

28 U.S.C. § 2243, but does not indicate who the proper custodian is.

In <u>Roman v. Ashcroft</u>, 340 F.3d 314 (6th Cir. 2003), the Court of Appeals for the

Sixth Circuit held that the "immediate custodian" rule applies in immigration habeas

cases.  Under this rule, the Sixth Circuit held that the INS District Director for the district

where a detention facility is located is the proper respondent.  The Sixth Circuit

explained:

> Pursuant to the immediate custodian rule, a prisoner filing a habeas
> petition should generally name the as a respondent the warden of the prison
> where he is confined.  Similarly, a detained alien filing a habeas petition should
> generally name as a respondent the person exercising daily control over his
> affairs.  Courts have said that a detained alien's immediate custodian is either the
> warden or the facility where the alien is detained or the INS District Director of
> the district where the aline is being detained.  We conclude that although the
> warden of each detention facility technically has day-to-day control over alien
> detainees, the INS District Director for the district where a detention facility is
> located "has power over" the alien habeas corpus petition.

240 F.3d. at 320 (citations omitted).

Here, Petitioner, citing <u>Roman</u>, named the Detroit District Director as respondent

stating that she is the immediate custodian of Petitioner and therefore jurisdiction and

venue are proper.

In 2004, the United States Supreme Court decided <u>Rumsfeld v. Padilla</u>, 124 S.

Ct. 2711 (2004).  In <u>Padilla</u>, the Supreme Court articulated a bright-line rule governing

so-called "core habeas petitions"--those challenging the present physical confinement of

7

the petitioner.  With respect to such petitions, the Supreme Court held, "jurisdiction lies in only one district: the district of confinement," and that "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  <u>Id</u>. at 2718, 2722.

The Court stated:

> Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.

<u>Id</u>. at 2724.

Respondent says that the Sixth Circuit's holding in <u>Roman</u> cannot be reconciled with the Supreme Court's holding in <u>Padilla</u>.  Petitioner says that <u>Padilla</u> does not disturb the Sixth Circuit's holding in <u>Roman</u> because the Supreme Court declined to address the issue of whether the Attorney General was a proper habeas respondent for "core challenges" <u>in immigration cases</u>.

In a footnote, the Supreme Court did not decide whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation, i.e "non-core" challenges.  <u>Padilla</u>, at 2718 n.8 (citing <u>Ahrens v. Clark</u>, 335 U.S. 188).  <u>Ahrens</u> involved challenges to final removal orders, not solely to detention orders.  While the Supreme Court also cited <u>Roman</u> in this footnote, it was cited for the proposition that <u>Roman</u> adopted the majority view that the Attorney General is not a proper respondent.  Thus, the question left open was the jurisdictional rules governing non-core alien habeas petitions, where a petitioner challenges something other than their present confinement.  The Supreme Court did not address the proper respondent in a core challenge <u>involving an alien</u>.

8

In the Sixth Circuit, the "immediate custodian" in an immigration habeas case is the District Director. The Circuit did not distinguish between "core" and "non-core" proceedings. That the Supreme Court only distinguished immigration habeas cases challenging deportation orders, and did not address the proper respondent in immigration habeas cases that do not challenge deportation orders, i.e core proceedings, is significant. In light of this, the Court must follow the rule in Roman. That is, that the District Director is the proper respondent in an immigration habeas case involving a challenge to confinement, i.e. a core challenge.

Indeed, a finding that the proper respondent is the warden of the facility where Petitioner is being detained, which in this case is the Sheriff of the Calhoun County,[7] ignores the relationship between ICE and the local jail in which he is held as a person in ICE custody. As explained in Roman, "District Directors are the heads of the basic operating units of the INS ...[and] oversee the confinement of aliens in all three kinds of INS detention facilities." 340 F.3d at 320. These detention facilities are: (1) service processing centers; (2) contract detention facilities; and (3) state or local governmental facilities used by ICE through intergovernmental service agreements. Id. Petitioner here is being housed in the Calhoun County Jail pursuant to a contract between the United States Marshal's Service and the Calhoun County Jail. Michigan law specifically authorizes such contracts. See M.C.L. § 801.101.

A careful review of the relevant documents evidencing the relationship between the Calhoun County Sheriff, the Calhoun County Jail, and the government relative to

---

[7]The Calhoun County Jail is operated under the direction of the Calhoun County Sheriff; a county jail in Michigan is under the jurisdiction of the county sheriff.

9

Petitioner's confinement clearly shows that Petitioner is not properly considered to be in the custody of the sheriff who operates the jail.  The contract defining the relationship is between the "United States Marshal Service" and the "Calhoun County Jail" and makes clear that Petitioner is a federal prisoner through ICE who is housed at the local level in the Calhoun County Jail at the option of the District Director.  Importantly, the contract states that "[t]he local government will not transport federal prisoners to any U.S. Courthouse without a specific request from the US [Marshal]..."  As the Supreme Court stated in <u>Padilla</u>, "the custodian is 'the person' with the ability to produce the prisoner's body before the habeas court."  124 S.Ct. at 2717, citing <u>Wales v. Whitney</u>, 114 U.S. 564 , 574 (1885).[8]  Moreover, the "Notice to EOIR Alien Address" refers to Petitioner as "<u>currently detained by INS</u>" at the Calhoun County Jail.  The "Authority to Detain" form lists Petitioner's address as "DICE" - the Detroit abbreviation for ICE.

Based on all of the above, it is clear that the District Director  has custodial control over Petitioner.  Indeed, as the Sixth Circuit recognized in <u>Roman</u>:

> The wardens of all these facilities act pursuant to INS detention standards and are considered agents of the INS District Director in their district...Whatever daily control state and local governments have over federal INS detainees, they have that control solely pursuant to the direction of the INS.  It is clear that the INS does not vest the power over detained aliens in the wardens of detention facilities because the INS relies on state and local governments to house federal INS detainees.  <u>Whatever daily control state and local governments have over federal INS detainees, they have that control solely pursuant to the direction of the INS</u>.

<u>Roman</u>, 340 F.3d at 320 (emphasis added).  Petitioner could have been housed at any

---

[8]<u>Wales</u> involved a court martial of a medical director in the Navy who was arrested and ordered by the Secretary of the Navy to confine himself to the city limits. The medical director filed a petition for habeas corpus.  The Supreme Court essentially held that the writ could not be entertained because there medical director was not being held by any "custodian."

number of jail facilities in Michigan's 83 counties at the option of the District Director.

She is not "some other remote supervisory official" referenced in Padilla. That

Petitioner simply happens to be housed in the Western District, presumably because it

is close to his residence, is irrelevant as to his "custodial" status. To find that

Petitioner's proper custodian is the Sheriff of Calhoun County, and therefore the person

to defend Petitioner's custodial status under federal immigration laws, is indeed fatuous.

It is the District Director who has control over Petitioner and the District Director is

located in the Eastern District.

Moreover, the Sixth Circuit, in a decision issued shortly after Padilla, reaffirmed

that a an alien's immigration habeas petition "is properly filed only in a court that has

personal jurisdiction over the alien's immediate custodian."  United States v. Garcia-

Echaverria, 374 F.3d 440 (6th Cir. 2004).

Thus, because Petitioner named the proper respondent, the Court has

jurisdiction and venue is proper in this district.  In other words, Petitioner's immediate

custodian, the District Director, and Petitioner resides in the same district for purposes

of jurisdiction and venue.  See Padilla, 124 S.Ct. at 2723.

The Court is aware that courts in other jurisdictions, and in this district, have held

that in immigration habeas cases where the Petitioner is challenging only their present

confinement, the proper respondent is the warden of the facility where the Petitioner is

confined.  See Demirxhiu v. Gonzalez, 05-CV-10054 (E.D. Mich. Feb. 28, 2005);

Drakoulis v. Ashcroft, __ F. Supp. 2d ___, 2005 WL 366977 (S.D.N.Y. Feb. 16, 2005)

Deng v. Garcia, 352 F. Supp. 2d 373 (E.D.N.Y. 2005); Beltran v. Wrona, 04-CV-60126

(E.D. Mich. Sep. 28, 2004); Nicolas v. Wrona, 04-CV-72798 (E.D. Mich. Aug. 20, 2004);

11

Oni v. Wrona, 04-CV-72565 (E.D. Mich. Aug. 16, 2004).  The Court, however, does not find these cases persuasive.  None of these decisions show a critical analysis of the custody status of an immigration detainee housed in a state or local facility.  That said, the Court recognizes that the housing of federal prisoners in state institutions is complex and often thorny.  See Ronald K. Chan, State Incarceration of Federal Prisoners After September 11, Whose Jail is it Anyway?, 69 Brook. L. Rev. 1335 (Summer 2004).[9]

B.  Merits

Petitioner challenges his continued detention pending removal as violative of his constitutional rights.  Respondent argues that the Court lacks jurisdiction to consider the discretionary decision to detain Petitioner, and alternatively, that Petitioner's detention is not unlawful.

As an initial matter, the Court finds that it has habeas jurisdiction to determine whether Petitioner is being detained in violation of his statutory and constitutional rights. See Demore v. Kim, 538 U.S. 510 (2003); Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir. 1999).

1.  Statutory Claim

a.

Petitioner says that he is improperly detained under 8 U.S.C. § 1226(c), which

_____

[9]In ACLU v. County of Hudson, 799 A.2d 629 (N.J. Super. 2002), the ACLU had filed suit to force a county jail to disclose the names of ICE detainees as required by New Jersey law.  The government refused to disclose the information on the grounds that the ICE regulations, which were adopted on an emergency basis, prevented such disclosure and trumped state law.  The government's position in that case presupposed that the detainees were under federal, not state, control, a position inconsistent with what the government is saying here.  The ACLU lost.

provides for mandatory detention of certain classes of aliens, such as those subject to removability because of engaging in terrorist activity under 8 U.S.C. § 1227(a)(4)(B) as well as those classified as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). Petitioner says that applying the mandatory detention statute to conduct occurring in Turkey 1988 for which he was convicted in 1990, well before the effective date of the mandatory detention statute, amounts to an impermissible retroactive application.

Respondent says that the record shows that while Petitioner is subject to mandatory detention under § 236(c), he is actually being detained under § 236(a), which gives the Attorney General discretionary authority to detain aliens pending removal. Thus, Respondent says there is an independent statutory basis for detention.

In reviewing the I-286 form ordering Petitioner's detention it appears that he was being detained under the discretionary authority, as the form indicates Petitioner may appeal his detention.

The immigration judge and BIA, however, found that Petitioner is not entitled to release because there was reason to believe he engaged in terrorist activities, which invokes mandatory detention. In her decision, the Immigration Judge refers to the mandatory detention provision. The BIA also referenced the finding that Petitioner had engaged in terrorist activities.

In a supplemental brief, Respondent argues that Petitioner is properly subject to mandatory detention under § 236(c)

Petitioner's argument that he cannot be subject to mandatory detention because his conviction pre-dates October 9, 1998 has some merit. Other courts have held that an alien cannot be detained under § 236(c) when they were released from custody

13

before this date.  Valasquez v. Reno, 37 F. Supp. 2d 663 (D.N.J. 1999); Alawday v.

Bebe, 43 F. Supp. 2d 1130 (D. Or. 1999).  However, the Court will accept for purposes

of the instant petition that Congress intended for mandatory custody the circumstances

here.

2.  Constitutional Claim

Petitioner says that detaining him under any provision of the statute violates his

constitutional rights because there is no evidence he is a threat or flight risk, and his

detention of more than eight months is presumptively unreasonable and

unconstitutional.  While all aliens are afforded due process protection once within the

borders of the United States, Zadvydas v. Davis, 533 U.S. 678 (2001), a lawful

permanent resident, such as Petitioner, is endowed with due process rights greater than

those of other aliens.  Langdon v. Plasenica, 459 U.S. 21, 32 (1982).

In Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003), the Sixth Circuit addressed the

propriety of indefinite pre-removal detention of aliens, stating:

> we hold that the INS may detain *prima facie* removable aliens for a time
> reasonably required to complete removal proceedings in a timely manner. If the
> process takes an unreasonably long time, the detainee may seek relief in habeas
> proceedings.

The Sixth Circuit further stated that "[o]ur rule requires the INS to act reasonably:

when actual removal is not reasonably foreseeable, criminal aliens may not be detained

beyond a reasonable period required to conclude removability proceedings without a

government showing of a 'strong special justification,' constitutional more than a threat

to the community, that overbalances the alien's liberty interest."  Id. at 273.  The Sixth

Circuit also rejected the application of a bright line rule governing the time period for

14

pre-removal detention.  The Sixth Circuit stated:

> A bright-line time limitation, as imposed in <u>Zadvydas</u> [a six month presumptive reasonable time for post-removal detention] would not be appropriate for the pre-removal period; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant.  In the absence of a set period of time, courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings.

Here, it cannot be said that Petitioner's removal proceedings are progressing with undue delay.  After Petitioner was taken into custody on July 29, 2004, his removal hearing was scheduled for August 17, 2004.  It was rescheduled to October 26, 2004 and again to December 6, 2004.

However, the Court observes what appears to be a piling on of removability charges against Petitioner.  He was initially charged with removability essentially for false statements regarding his conviction in Turkey; neither charge subjected him to mandatory detention and ICE did not see fit to detain him.  Then, he was charged with being an aggravated felon.  Even assuming a 1990 conviction in Turkey may even be the predicate for being an aggravated felon,[10] his bond review proceedings before the immigration judge focused on whether there is a reason to believe he is removable based on engaging in terrorist activity.  At the time, Petitioner had not yet been charged as removable for being a terrorist.  After the immigration judge's decision, Petitioner was

---

[10]It is significant that Petitioner's conviction, on which both the aggravated felony and terrorist charges for removal are based, occurred in Turkey, not the United States.  In <u>Small v. United States</u>, 125 S.Ct. 1752 (2005), Justice Breyer held that a felon in possession charge could not be predicated on a conviction entered in a foreign court.  Justice Breyer observed that "foreign convictions differ from domestic convictions in important ways" and could potentially include "a conviction from a legal system that is inconsistent with an American understanding of fairness."  <u>Id</u>. at 1755.

formally charged as removable for engaging in terrorist activity.  The manner in which Petitioner's case has proceeded, or rather escalated, raises suspicion as to the actions of ICE under the circumstances.  Once Petitioner was labeled a terrorist, the proceedings took on a decidedly more complex, if not high-profile, aura.[11]

As to the constitutionality of Petitioner's detention, his argument that eight months detention is presumptively unreasonable because it exceeds the six month benchmark for post-removal proceedings orders is not well taken.  The Sixth Circuit in Ly expressly rejected the imposition of a bright line time period for pre-removal detention.

In addition to the fact that Petitioner's removal stems from a foreign conviction, see n.10, supra, also compounding the case is the fact that the PKK was not designated by the State Department as a terrorist organization until October 8, 1997, well after Petitioner's involvement in the organization.  See 62 Fed. Reg. 25650.  While the Court will not second guess the State Department's designation, a review of a Human Rights Report from the State Department on Turkey in 1993 reveals a country at the time engaged in what could be characterized as a civil war.  In short, activities which occurred in 1988 may not be viewed in the same light as activities occurring after 1997.  Also problematic is the fact that Turkey has revoked Petitioner's citizenship.  While the record is unclear on whether Turkey will ever accept Petitioner, as the government says it has no official documentation that it will not accept Petitioner, the probability of

---

[11]Stepping back, the Court is left with the impression that the vigor with which ICE has given this case, and particularly the manner in which it is pursuing Petitioner's detention, stems from the introduction of the moniker "terrorist" into the case.

repatriation is questionable, if not remote.  This raises the legitimate likelihood possibility of indefinite detention.  In short, there are serious questions as to whether Petitioner's removal charges can be sustained, and if sustained, whether Petition can be returned to Turkey.

Given the legal intricacies surrounding Petitioner's removal, it will very likely take years for a final determination of Petitioner's status.  It is certain that the removal proceedings will be protracted as this case winds through the appellate process.  In determining whether Petitioner's detention is unreasonable, the Court cannot ignore the likely future course of the case which shows a real certainty that Petitioner is facing a significant period of detention for an indeterminate period of time.  This amounts to a violation of due process under the circumstances.

Also important to the decision to order Petitioner's release from custody is the Courts' finding that Petitioner is not a danger to the community or risk of flight.  Although Respondent says that Petitioner is a flight risk, they have not submitted any evidence to the Court to substantiate the argument.  While the Immigration Judge in denying bond stated, in dicta, that Petitioner was a flight risk, the Court sees no support in the record for that statement and is not bound by such a statement.  The Immigration Judge found Petitioner a flight risk because he had fled Turkey, had given inaccurate information on his asylum application, and was facing possible removal.  These reasons do not in this Court's view give rise to a finding that Petitioner is a risk of flight. Indeed, there are many aliens who fled their native country, gave false information, and now face removal.  It is very likely that many of those aliens are not being detained pending removal simply for these reasons.  The record shows the following undisputed facts: (1)

17

Petitioner has lived an exemplary life in the United States, (2) Petitioner has strong family and community ties and support; (3) Petitioner appeared for all scheduled immigration proceedings for the nearly two years since he was placed in removal proceedings prior to being taken into custody; (4) Petitioner is essentially state-less - he has no passport, citizenship, or travel papers and has no place to go other than back to his family and community in Harbert, Michigan.

In sum, Petitioner is a lawful permanent resident of the United States.  He has been a model immigrant vigorously asserting his right to remain in the United States. He is not a threat to anyone nor a risk of flight.  He has strong ties to the community in which he resides.  He is subject to an unreasonable period of detention pending the completion of removal proceedings given the nature of the case.  Under these circumstances, there is simply no good reason to deny him his freedom pending completion of the removal proceedings.

Accordingly, Petitioner is entitled to release until such time as his removal proceedings are completed.

Execution of this order is stayed for ten (10) days to afford Respondent an opportunity to request appellate review, if it so chooses.

SO ORDERED.

Dated: May 20, 2005                      s/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 20, 2005, by electronic and/or ordinary mail.

                                         s/Julie Owens
                                        Case Manager, (313) 234-5160

18